James R. Lance, Esq. (SBN 147173)
  jlance@noonanlance.com
Ethan T. Boyer, Esq. (SBN 173959)
  eboyer@noonanlance.com
**NOONAN LANCE & BOYER LLP**
701 Island Avenue, Suite 400
San Diego, California  92101
Tel.: (619) 780-0880/Fax: (619) 780-0877

Attorneys for Defendant
Initiate Government Solutions, LLC

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS EZ INFO, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> INITIATE GOVERNMENT SOLUTIONS, LLC, a Delaware company, <br><br> Defendant. | Case No.: 25-CV-02658-W-AHG <br><br> **DEFENDANT INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM** <br><br> Judge:        Hon. Thomas J. Whelan <br><br> Magistrate:  Hon. Allison H. Goddard <br><br> Action Filed:        October 7, 2025 |
| INITIATE GOVERNMENT SOLUTIONS, LLC, a Delaware company, <br><br> Counterclaimant. <br><br> v. <br><br> VETERANS EZ INFO, INC., a California corporation; DOES 1 through 10, <br><br> Counterclaim Defendants. | **DEMAND FOR JURY TRIAL** |

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

Defendant/Counterclaim Plaintiff Initiate Government Solutions, LLC ("IGS") hereby answers the Complaint (Dkt. 1) filed by Plaintiff/Counterclaim Defendant Veterans EZ Info, Inc.'s ("VetsEZ") by and through its undersigned counsel, as follows:

## IGS' GENERAL DENIAL

a.    IGS denies every allegation set forth in the Complaint that is not specifically admitted herein.

b.    IGS denies any liability to Plaintiff and specifically denies that Plaintiff is entitled to any of the relief it seeks.

c.    The headings below, from "Jurisdiction and Venue" through "Prayer for Relief," correspond to the headings in Plaintiff's Complaint. In addition, the numbered paragraphs below, through "Prayer for Relief," correspond to the paragraph of the same number in Plaintiff's Complaint.

## JURISDICTION AND VENUE

1.    IGS admits the allegations of Paragraph 1 of the Complaint.

2.    IGS denies the allegations of Paragraph 2 of the Complaint. IGS reserves its objection to personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

3.    IGS denies the allegations of Paragraph 3 of the Complaint. IGS reserves its objection to venue pursuant to Fed. R. Civ. P. 12(b)(3), and IGS further asserts that the Court should transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a), and the prior-pending-action doctrine.

## PARTIES

4.    IGS admits the allegations in Paragraph 4 of the Complaint.

5.    IGS admits the allegations in Paragraph 5 of the Complaint.

6.    IGS admits that Exhibit 1 attached to the VetsEZ Complaint is a redacted version of the Subcontract, and admits the remaining allegations in Paragraph 6 of the Complaint.

**BACKGROUND FACTS**

7. IGS admits that it communicated with Augie Turano prior to September 3, 2024, and denies the remaining allegations in Paragraph 7, including any allegation that its actions violated the Subcontract.

8. IGS denies the allegations of Paragraph 8 of the Complaint.

9. IGS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and on that basis denies same.

10. IGS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis denies same.

11. IGS admits that it communicated with government personnel prior to September 3, 2024, and denies any remaining allegations in Paragraph 11, including any allegation that its actions violated the Subcontract.

12. IGS lacks knowledge or information sufficient to form a belief as to the truth of VetsEZ's allegations regarding its communications with Portia Vertreese and therefore denies same. IGS denies the remaining allegations in Paragraph 12 of the Complaint.

13. IGS admits that VetsEZ sent a cease-and-desist letter on August 15, 2025 informing IGS of an alleged breach of the Subcontract. IGS denies the allegations of VetsEZ in Paragraph 13 of the Complaint that the actions of IGS set forth in the cease-and-desist letter constituted a breach of the Subcontract.

14. IGS denies VetzEz notified IGS that it would not exercise Subcontract Option 3 to extend the Subcontract on August 21, 2025. IGS admits it received said notice for the first time on August 25, 2025.

15. IGS admits that Mike Baker sent a single group email to the vx130notify@va.gov workgroup that included VetzEZ, other subcontractors on

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

team, and VA employees, and copied Claudine Beron and Madeline Larkin, but denies that said communication constituted a breach of the Subcontract.

16.    IGS admits that Mike Baker sent an email to government personnel on September 10, 2025, but denies that such communication constituted a breach of the Subcontract. IGS denies that Madeline Larkin and Claudine Beron were under obligation to notify VetsEZ of this email. IGS also denies that any failure to notify constituted a breach of the Subcontract. IGS denies all remaining allegations in Paragraph 16 of the Complaint.

17.    IGS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Complaint, and on that basis, denies all allegations of Paragraph 17.

18.    IGS denies all allegations of Paragraph 18 of the Complaint.

19.    IGS admits VetsEZ allegations in Paragraph 19 that it sent a cease-and-desist letter to IGS on September 16, 2025, that IGS previously had sent a cease-and-desist letter to Hui Huliau, and that VetsEZ demanded that IGS stop threatening Hui Huliau with legal action. IGS denies the allegations that its threatened legal action against Hui Huliau was in any way wrongful or that Hui Huliau's conduct was lawful. IGS denies all remaining allegations in Paragraph 19.

20.    IGS denies the allegations in Paragraph 20 of the Complaint.

21.    IGS denies the allegations in Paragraph 21 of the Complaint.

22.    IGS admits the allegation in Paragraph 22 of the Complaint that seven replacements of personnel were needed during the term of the Subcontract. IGS denies that the need for these replacements, or the alleged duration of position vacancies, constitute a breach of the Subcontract by IGS. IGS denies all other allegations in Paragraph 22 of the Complaint.

23.    IGS denies the allegations in Paragraph 23 of the Complaint.

24.    IGS denies the allegations in Paragraph 24 of the Complaint.

25.    IGS denies the allegations in Paragraph 25 of the Complaint.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

26.    IGS re-asserts its responses to Paragraphs 1 through 25 as if fully restated herein.

27.    IGS admits that VetzEZ and IGS entered into the Subcontract but denies the remaining allegations in Paragraph 27 of the Complaint, including the legal conclusions of VetsEZ regarding IGS' obligations under the Subcontract.

28.    IGS denies the allegations in Paragraph 28 of the Complaint in that its use of the term "valid" is vague and incomprehensible.

29.    IGS denies the allegations in Paragraph 29 of the Complaint.

30.    IGS denies the allegations in Paragraph 30 of the Complaint.

31.    IGS denies the allegations in Paragraph 31 of the Complaint.

32.    IGS denies the allegations in Paragraph 32 of the Complaint.

33.    IGS denies the allegations in Paragraph 33 of the Complaint.

34.    IGS denies the allegations in Paragraph 34 of the Complaint.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition)

35.    IGS re-asserts its responses to Paragraphs 1 through 34 as if fully restated herein.

36.    IGS denies the allegations in Paragraph 36 of the Complaint.

37.    IGS denies the allegations in Paragraph 37 of the Complaint.

38.    IGS denies the allegations in Paragraph 38 of the Complaint.

39.    IGS denies the allegations in Paragraph 39 of the Complaint.

## THIRD CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

40.    IGS re-asserts its responses to Paragraphs 1 through 39 as if fully restated herein.

41. IGS admits that every contract contains an implied covenant of good faith and fair dealing. IGS denies all other allegations in Paragraph 41 of the Complaint.

42. IGS denies the allegations in Paragraph 42 of the Complaint.

43. IGS denies the allegations in Paragraph 43 of the Complaint.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

44. IGS re-asserts its responses to Paragraph 1 through 43 as if fully restated herein.

45. IGS admits the allegations that it sent a cease-and-desist letter to Hui Huliau. IGS denies all remaining allegations in Paragraph 45 of the Complaint.

46. IGS denies the allegations in Paragraph 46 of the Complaint.

47. IGS denies the allegations in Paragraph 47 of the Complaint.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

48. IGS admits that IGS was aware that VetsEZ had an existing economic relationship with the VA while it was working on the Subcontract. IGS denies all other allegations in Paragraph 48.

49. IGS denies the allegations in Paragraph 49 of the Complaint.

50. IGS denies the allegations in Paragraph 50 of the Complaint.

## SIXTH CLAIM FOR RELIEF

### (Defamation / Trade Libel)

51. IGS re-asserts its responses to Paragraphs 1 through 50 as if fully restated herein.

52. IGS denies the allegations in Paragraph 52 of the Complaint.

53. IGS denies the allegations in Paragraph 53 of the Complaint.

54. IGS denies the allegations in Paragraph 54 of the Complaint.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## SEVENTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

55.    IGS re-asserts its responses to Paragraphs 1 through 54 as if fully restated herein.

56.    IGS denies the allegations in Paragraph 56 of the Complaint.

57.    IGS denies the allegations in Paragraph 57 of the Complaint.

58.    IGS denies the allegations in Paragraph 58 of the Complaint.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment / Restitution)

59.    IGS re-asserts its responses to Paragraphs 1 through 58 as if fully restated herein.

60.    IGS denies the allegations in Paragraph 60 of the Complaint.

61.    IGS denies the allegations in Paragraph 61 of the Complaint.

## NINTH CLAIM FOR RELIEF

### (Declaratory Relief – 28 U.S.C. § 2201; Cal. Code Civ. Proc. § 1060)

62.    IGS re-asserts its responses to Paragraphs 1 through 61 as if fully restated herein.

63.    IGS admits that a controversy exists between the parties regarding their rights and obligations under the Subcontract but denies VetsEZ's alleged characterization of the controversy in Paragraph 63.

64.    IGS denies the allegations in Paragraph 64 of the Complaint.

## PRAYER FOR RELIEF

IGS denies that VetsEZ is entitled to any relief, and requests that the Court deny all relief requested by VetsEZ, dismiss VetsEZ's claims with prejudice, and award IGS such further and additional relief as is deemed just, including the relief requested below in the IGS Counterclaim.

/ / /

/ / /

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### Failure to State a Claim

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state facts sufficient to constitute a claim against IGS.

### SECOND AFFIRMATIVE DEFENSE

#### Waiver

Plaintiff's claims are barred, in whole or in part, because Plaintiff has voluntarily, knowingly, and intentionally waived, released, and relinquished any right to assert any of the purported causes of action in the Complaint against IGS or to seek or make any recovery against IGS by its acts or omissions.

### THIRD AFFIRMATIVE DEFENSE

#### Estoppel

Plaintiff's claims are barred, in whole or in part, pursuant to the doctrine of estoppel due to Plaintiff's own acts, omissions, and other conduct, including its failure to perform its obligations under the Subcontract and/or its obstruction of IGS' ability to fulfill its obligations pursuant to the Subcontract.

### FOURTH AFFIRMATIVE DEFENSE

#### Consent/Acquiescence

Plaintiff's claims are barred, in whole or in part, pursuant to the doctrines of consent and acquiescence because some or all of the conduct challenged in the Complaint was expressly permitted, authorized, or consented to by Plaintiff or the governing contracts.

### FIFTH AFFIRMATIVE DEFENSE

#### Unclean Hands

Plaintiff's claims are barred, in whole or in part, pursuant to the doctrine of unclean hands, due to Plaintiff's own acts, omissions, and other wrongdoing, including its failure to perform its obligations under the Subcontract and/or its

obstruction of IGS' ability to fulfill its obligations pursuant to the Subcontract. Plaintiff's claims, particularly its equitable, declaratory, unfair competition, and reputational claims, are barred by the doctrine of unclean hands due to Plaintiff's own conduct in soliciting Defendant's employees, misusing Defendant's confidential information, and interfering with Defendant's contractual and business relationships

## SIXTH AFFIRMATIVE DEFENSE

### Failure of Condition Precedent

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to satisfy one or more conditions precedent required for Defendant's performance under the Subcontract.

## SEVENTH AFFIRMATIVE DEFENSE

### Failure to Perform

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to perform its obligations under the Subcontract, including obligations necessary to enable Defendant's performance.

## EIGHTH AFFIRMATIVE DEFENSE

### Prevention of Performance

Plaintiff's claims are barred, in whole or in part, because Plaintiff breached the alleged contract with IGS by, *inter alia*, failing to timely, fully, and adequately perform the terms and conditions therein, including adding extracontractual requirements on IGS' staffing process under the Subcontract, thereby obstructing IGS' ability to staff personnel on the Subcontract as required, and discharging any obligation on the part of IGS.

## NINTH AFFIRMATIVE DEFENSE

### Plaintiff's Prior Breach of Contract

Plaintiff's claims are barred, in whole or in part, because Plaintiff was in breach of the contract and in substantial default, in that it violated the terms and

conditions of the alleged contract, including, *inter alia*, soliciting IGS' employees in contravention of the Subcontract's non-solicitation clause, unilaterally adding extracontractual conditions on staffing positions under the Subcontract, and unilaterally backfilling personnel positions without observing the required contract modification process.

## TENTH AFFIRMATIVE DEFENSE

### First Uncured Material Breach

Plaintiff's claims are barred, in whole or in part, because Plaintiff first breached the contract by, *inter alia*, soliciting IGS' employees in contravention of the Subcontract's non-solicitation clause and backfilling personnel positions without observing the required contract modification process.

## ELEVENTH AFFIRMATIVE DEFENSE

### Failure to Mitigate Damages

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed, refused, and neglected to mitigate its alleged damages, if any.  Plaintiff is thereby barred in whole or in part from recovery for such damages which would have been prevented by reasonable efforts on its part, including by accepting IGS' offer to waive its right to hire positions for VetsEZ.

## TWELFTH AFFIRMATIVE DEFENSE

### Setoff

IGS alleges that to the extent it is subject to any damages, all recovery must be set off by, *inter alia*, the amount owed by Plaintiff to IGS for its breaches of its contractual obligations and interference with Plaintiff's business, among other amounts.

## THIRTEENTH AFFIRMATIVE DEFENSE

### No Double Recovery

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff seeks to recover damages which constitute a double recovery.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## FOURTEENTH AFFIRMATIVE DEFENSE

### No Damages/Speculative Damages

Plaintiff's claims are barred, in whole or in part, because Plaintiff either suffered no damages or Plaintiff's damages are speculative as a matter of law, and were unforeseeable at the time the alleged contract was entered into, including its prayer for economic, general, special, and non-economic damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

### Unjust Enrichment

Plaintiff's claims are barred, in whole or in part, because Plaintiff has been unjustly enriched by, *inter alia*, withholding payment owed to IGS under the Subcontract.

## SIXTEENTH AFFIRMATIVE DEFENSE

### Anticipatory Repudiation

VetsEZ's claims are barred, in whole or in part, because Plaintiff manifested a clear, unequivocal intent not to perform under the contract when its performance was due by, *inter alia*, soliciting IGS' employees in contravention of the Subcontract's non-solicitation clause and insisting that it would unilaterally backfill personnel positions without observing the required contract modification process.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### Truth/Opinion

Any statements attributed to IGS underlying VetsEZ's trade libel and defamation claims were true, substantially true, or constituted protected opinion or non-actionable statements.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### Impossibility/Impracticability

VetsEZ's claims are barred, in whole or in part, because IGS' performance was rendered impossible or commercially impracticable due to VetsEZ's own conduct, including, *inter alia*, obstructing IGS' performance, failing to comply with

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

the Subcontract's terms, imposing extracontractual conditions, and the actions of third parties outside IGS' control.

## NINETEENTH AFFIRMATIVE DEFENSE

### Statute of Limitations

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation, including those governing contract, tort, fraud, and defamation claims. To the extent Plaintiff seeks relief for alleged conduct occurring outside the applicable statutory periods, such claims are time-barred.

## TWENTIETH AFFIRMATIVE DEFENSE

### Laches

Plaintiff's claims for equitable relief are barred by laches because Plaintiff unreasonably delayed in asserting those claims and such delay has prejudiced Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Initiate Government Solutions, LLC prays for judgment in its favor against Veterans EZ Info, Inc. its claims, as follows:

1.     That Veterans EZ Info, Inc. take nothing from its Complaint, that judgment be entered in favor of Initiate Government Solutions, LLC, and that all claims against Initiate Government Solutions, LLC be dismissed with prejudice; and

2.     That the Court award Initiate Government Solutions, LLC such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

For its Counterclaim against Plaintiff and Counterclaim Defendant Veterans EZ Info, Inc. ("VetsEZ"), Defendant and Counterclaimant IGS ("Counterclaimant", "Counterclaimant IGS" or "IGS"), by and through counsel, alleges as follows:

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1332(a)(1) in that there is complete diversity between IGS and VetsEZ, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2. The Counterclaim stated herein also is within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) because the Counterclaim is so related to Plaintiff's claims in the Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over VetsEZ because it is a California corporation which conducts business in California, maintains an office in this district, engaged in acts in this district giving rise to this controversy, and has waived any objection to personal jurisdiction by filing its Complaint in this court.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the Counterclaim occurred in this district, and VetsEZ filed the Complaint in this district.

## JOINDER

5. Pursuant to Federal Rule of Civil Procedure 13(h) and 20, Counterclaimant IGS brings the following claims against Counterclaim Defendant VetsEZ because the counterclaims arise from the same transactions and occurrences alleged in the Complaint, relief is sought against it jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence, and because questions of law and fact are common to counterclaim defendant.

## PARTIES

6. Counterclaimant IGS is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in West Palm Beach, Florida.

13    Case No. 25-CV-02658-W-AHG

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

7. IGS is a federal Information Technology ("IT") services provider that delivers innovative Enterprise IT and Health Services solutions across the federal sector. Its focus is on data analytics, health informatics, cloud migration, and the modernization of federal information systems.

8. IGS is a certified woman-owned small business.

9. Counterclaim Defendant VetsEZ is a corporation organized and existing under the laws of California with its principal place of business in San Diego, California. Upon information and belief, VetsEZ is a federal government subcontractor which has several hundred employees.

## COUNTERCLAIM ALLEGATIONS

### The Subcontract

10. IGS and VetsEZ were parties to Subcontract No. IGS-T4NG-TO26-HMDM (the "Subcontract") supporting the U.S. Department of Veterans Affairs Health Middleware and Data Management (HMDM) DevSecOps Support Services Contract held by VetsEZ as the prime contractor. [See Subcontract attached to hereto as "Exhibit A"].

11. Pursuant to the Subcontract, IGS is a subcontractor who provided services to VetsEZ, including development and maintenance for VX-130 (legacy data migration tool) and Voogle (legacy clinical decision support tool).

12. IGS commenced providing services under the Subcontract in 2024. The initial term was from September 3, 2024 to January 31, 2025.

13. On January 29, 2025, VetsEZ exercised its option to extend the Subcontract for an additional term running from February 1, 2025 to September 27, 2025.

14. VetzEz did not exercise it option to extend the Subcontact after the term which expired on September 27, 2025.

15. IGS does not dispute that VetzEz had the right to not extend the Subcontract beyond September 27, 2025. However, in addition to several material

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

breaches by VetzEz during the Subcontract, VetzEZ breached its contractual obligations and engaged in tortious conduct to unlawfully use IGS confidential information and interfere with IGS' contractual agreements and relationships with its employees, contractors and other persons/entities. The total damages that VetsEZ, its agents and co-conspirators caused IGS exceed $3,000,000.

16. Article XXVI, Section (b) of the Subcontract prohibits VetsEZ from using, commercializing, or disclosing confidential information. [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

17. Section (a) of Article XXVI defines "Confidential Information" to "include, but is not limited to, custom work product, proprietary ideas and know-how, trade secrets, trade dress, accounting and financial data, marketing materials and data, personnel records, customer contact lists, proprietary pricing, technical data, and the like." [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

18. Section (a) of Article XXVI establishes that "any breach of the terms of this Article shall be deemed a material breach" of the Subcontract. [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

19. Article XXXVI of the Subcontract prohibits VetsEZ from soliciting IGS's employees during the term of the Subcontract and for one (1) year thereafter. Specifically, the Subcontract prohibits VetsEZ from:

> directly or indirectly solicit[ing], recruit[ing], or hir[ing] as its employee or agent, any then current employee of the other Party assigned to or participating in the Work hereunder without the prior written consent of the Party employing such individual. The foregoing is not to be construed as a prohibition against routine, commercial, indirect solicitation or recruiting processes (e.g., via newspaper advertisement or Internet advertisement), but shall be construed as a prohibition against direct solicitations and hires. This clause shall in no way be used construed to restrict, limit, or encumber the rights of any employee granted by law.

[See Subcontract, attached to hereto as "Exhibit A" at page 28].

20. Despite these restrictions, after deciding to stop working with IGS but before IGS was notified that VetsEZ would cease working with IGS on September 27, 2025, VetzEz embarked on a scheme to recruit and hire IGS employees to perform the same work they had been performing for IGS under the Subcontract.

**VetsEZ Unlawfully Solicits/Hires IGS Personnel**

21. On August 25, 2025, counsel for VetsEZ sent a letter providing notice that VetsEZ would not be exercising Option 3 or any further options of the Subcontract and that VetsEZ would allow the Subcontract to expire on September 27, 2025.

22. Prior to that notice, VetsEZ had posted job descriptions on its website matching all, except one, of the personnel positions assigned to IGS under the Subcontract.

23. By September 2, 2025, VetzEz entered into an agreement with Hui Huliau, LLC to replace IGS. Hui Huliau began an aggressive campaign to recruit and hire IGS' employees who were critical to the success of the HMDM DevSecOps contract for the VA.

24. In an effort to hide its breach of the Subcontract, and conceal their unlawful solicitation of IGS staff, the job postings on the VetsEZ website, which matched the roles being performed by IGS staff on the HMDM DevSecOps Contract, were removed and posted on the Hui Huliau Website.

25. On September 2, 2025, a recruiter named Dan Berg, who identified himself as working for Hui Huliau, called IGS employee J. Marcus Green and informed Mr. Green that Hui Huliau was taking over the resources for the HMDM DevSecOps contract, and informed him that 14 people were identified to be moved to Hui Huliau from IGS.

26. On September 2, 2025, IGS employee John Baumbauer received a voicemail message from Mr. Berg stating, "[M]y name is Dan Berg, I'm with Hui Huliau . . . I guess with consolidation, we will be taking over the project with

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

MDM…would like to chat with you regarding next steps to bring you aboard. They do want to keep you as well[.]" [See Baumbauer Sworn Declaration and emails attached hereto as "Exhibit B"]. Hui Huliau contacted Mr. Baumbauer several additional times from September 3-8, 2025. ["Exhibit B"].

27.    On September 2, 2025, IGS employee Bryan Walker received voicemail messages from Hui Huliau employees Dan Berg and Adrian Herzberger. [See Walker Sworn Declaration and email attached hereto as "Exhibit C"]. Herzberger stated on that date: "Hi Brian, this is Adrian from Hui Huliau . . . I don't know if you've heard the news about IGS and the contract, but we're taking over some work share, which would include your position." ["Exhibit C"]. Herzberger called again on September 5 and sent an email on September 8 seeking to convince Walker to join Hui Huliau. ["Exhibit C"].

28.    On September 2, 2025, IGS employee Clayton Henry received a voicemail from Mr. Berg stating "I know that we've got a few incumbents that we were wanting to bring over with us. So, I would like to chat with you about who we are as well as how we're going to make it a smooth transition for you . . . this is Dan Berg with Hui Huliau[.]" [See Henry Sworn Declaration attached hereto as "Exhibit D"].

29.    In September 2025, IGS employee Joe Kopra was contacted three times by Hui Huliau employees, a text message from Adrian Herzberger on September 3, a text message from Marcie Say-Aguinaldo on September 4 and a voicemail from Marcie that same day, all attempting to convince Mr. Kopra to leave IGS and join Hui Huliau and continue working on the same project for VetsEz. [See Kopra Sworn Declaration attached hereto as "Exhibit E"].

30.    In September 2025, IGS employee Mike Baker was contacted seven times by Hui Huliau employees, a text message from Dan Berg on September 2, two telephone calls from Adrian Herzberger on September 3, a text message and voicemail from Marcie Say-Aguinaldo, a phone call from Dan Fink on September 5

and an email from Mr. Herzberger on September 8, all attempting to convince Mr. Baker to leave IGS and join Hui Huliau and continue working on the same project for VetsEz. [See Baker Sworn Declaration attached hereto as "Exhibit F"].

31. On September 2, 2025, IGS employee Jeffrey Husband was contacted by Mr. Berg, who attempted to recruit him to leave IGS and join Hui Huliau.

32. On September 2, 2025, Dan Berg called IGS employee J. Marcus Green, identified himself as working for Hui Huliau, informed Mr. Green that Hui Huliau was taking over the resources for the HMDM DevSecOps contract, and told him that 14 people were identified to be moved to Hui Huliau from IGS.

33. During this time frame, IGS employee Ishan Bhardwaj was contacted by Hui Huliau about leaving IGS to come work for Hui Huliau.

34. On September 3, 2025, IGS employee Robert Nace received a phone call and text message from Mr. Berg, who stated that IGS was transitioning off the HMDM DevSecOps contract and wanted to know if Mr. Nace was interested in staying on the contract. He informed Mr. Nace that VetsEZ wanted to keep him on the contract.

35. Andrew Park, the VetsEZ Program Manager on the HMDM DevSecOps contract, informed IGS employees that Dan Fink, VetsEZ's Director, Digital Services, provided their information to Hui Huliau in order to solicit them for employment.

36. Hui Huliau did not solicit all of the IGS employees but was selectively recruiting them based on their perceived performance and the critical nature of their jobs for the HMDM DevSecOps contract.

37. In that Hui Huliau was not a party to the Subcontract, nor had it performed any work on the HMDM DevSecOps contract previously, the only way Hui Huliau would know which employees to solicit was through VetzEz's unlawful disclosure of confidential information to Hui Huliau.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

38. When the initial solicitations from Hui Huliau failed to yield sufficient interest from IGS' employees, VetsEZ began to openly solicit employees to leave IGS and join Hui Huliau.

39. On September 8, 2025, Adrian Herzberger of Hui Huliau began sending emails to IGS subcontractors and employees on their government (va.gov) email accounts titled "Time-Sensitive: Opportunity to Remain on VA Contract – Hui Huliau." The va.gov emails are not publicly known or available, and Hui Huliau could only have known the va.gov account emails if that information had been shared by VetsEZ for the purpose of soliciting IGS employees.

40. IGS attempted to induce VetsEZ to abide by its contractual obligations, to no avail.

41. On September 8, 2025, counsel for IGS sent a letter to counsel for VetsEZ notifying VetsEZ of the material breaches of the Subcontract, demanding that VetsEZ cease and desist its violations. VetsEZ never responded to this letter. Instead, it stepped up its recruitment efforts of IGS personnel and attempted to discredit employees and subcontractors who did not agree to join Hui Huliau. [See "Exhibit G" attached hereto].

42. On September 8, 2025, IGS' counsel wrote to Hui Huliau notifying it of the existence of the non-solicitation clause in the Subcontract and VetsEZ's breach of that provision, as well as VetsEZ's breach of its confidentiality obligation, and demanding that Hui Huliau cease and desist its solicitation of IGS personnel. [See "Exhibit H" attached hereto]. That same day, Hui Huliau's General Counsel, Scott Lee, wrote to IGS's counsel to indicate he had received the letter and that "the matter will be addressed accordingly."

43. Later that day, September 8, 2025, Mr. Lee called IGS' counsel to provide assurances that he had instructed his client to cease and desist from all attempts to recruit IGS personnel.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

44. On September 9, 2025, Andrew Park of VetsEz told IGS employees at an "all hands" meeting that Hui Huliau was a good company, and encouraged IGS employees to talk to Dan Berg, the Hui Huliau recruiter, who had been reaching out to IGS employees.

45. On September 10, 2025, two days after Hui Huliau's General Counsel had assured IGS that Hui Huliau would stop all recruitment of IGS personnel, outside counsel for Hui Huliau sent a letter disclaiming any wrongdoing and indicating Hui Huliau would continue to recruit and hire IGS' personnel. [See "Exhibit I" attached hereto].

46. On September 12, 2025, VetsEZ called an "all hands" meeting during which William Turner, VetsEZ's Executive Vice President, informed IGS employees that open jobs (i.e. the ones held by IGS staff) would be on VetsEZ's website for IGS staff to apply if they wanted to stay with the program. The IGS employees understood this as a not-so-subtle attempts to recruit for VetsEZ.

47. VetsEZ and Hui Huliau worked together in concert to unlawfully solicit and hire IGS employees. They ramped up the intensity of the communications with IGS personnel, giving them short deadlines to respond, sometimes requiring same-day responses, before the term of the Subcontract expired.

48. Their unlawful efforts succeeded. VetsEZ and Hui Huliau persuaded ten IGS employees to leave IGS and join Hui Huliau, individuals who would have worked on other IGS contracts but for the actions of VetsEZ and Hui Huliau.

**VetsEZ's Retaliation Against IGS Personnel Who Stayed with IGS**

49. IGS personnel who did not agree to leave IGS and join VetsEZ/Hui Huliau to continue work on the project were subjected to a smear campaign and trumped-up charges which resulted in investigations by the Officer of Inspector General.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

50. When Mike Baker, John Baumbauer, and Robert Nace declined to join Hui Huliau, VetsEZ filed complaints against them with the Office of Inspector General (OIG), triggering OIG investigations.

51. VetsEZ subsequently contacted IGS, demanding that these employees immediately stop all work on the Subcontract project. Specifically, VetsEZ claimed John Baumbauer was an "insider threat," and claimed that there were ongoing investigations into Mike Baker and Robert Nace. VetsEZ failed to substantiate their thinly veiled allegations.

52. When IGS contacted the VA Personnel Security Adjudication Center to inquire about the status of the "insider threat" claims and any ongoing investigations, the VA reported they had no records of such a claim being filed by VetsEZ or anyone else.

53. Based on the lack of VA records reporting these three individuals as security threats, VetsEZ obviously had circumvented the appropriate claim procedures through the VA, when it went directly to OIG to start investigations against the IGS personnel, violating proper VA protocol and procedures.

54. These false claims triggered in-person OIG investigations at the residences of Mike Baker and John Baumbauer.

55. Additionally, after Mike Baker told VetsEZ he was not leaving IGS, VetsEZ made false announcements that he *was* leaving IGS, by retiring as the lead of the VX-130 project.

56. Mr. Baker sent an email to correct and clarify the false statements that he was leaving the project or IGS.

57. None of the investigations revealed any wrongdoing by Mike Baker, John Baumbauer, or Robert Nace.

58. As a direct result of VetsEZ's conduct, IGS sustained financial losses in excess of $3,000,000, which includes losses due to the actions by VetsEZ and Hui

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

Huliau in unlawfully interfering with IGS' personnel and refusing to pay the final invoice to IGS in the amount of $486,306.45.

### IGS Complies with the Subcontract while VetsEZ Breaches Staffing Rules

59.     VetzEZ has taken the incorrect position that IGS did not comply with the terms of the Subcontract when working on the project.

60.     In fact, it was VetsEZ, not IGS, which is responsible for the issues about which VetsEz now complains.

61.     Despite IGS' efforts to meet its contractual obligations notwithstanding VetsEZ's delays and extracontractual conditions placed on staffing, VetsEZ consistently sought to place the blame on IGS for any staff turnover.

62.     In addition, on August 15, 2025, counsel for VetsEZ sent a letter to IGS falsely stating that IGS had breached the Subcontract based on communications with government personnel in 2024 from before the parties had entered into the Subcontract. IGS has not improperly contacted any government personnel related to the Subcontract or underlying work since it executed the Subcontract.

63.     VetsEZ's counsel's August 15, 2025 letter also claimed that IGS "assertions that IGS has "failed to maintain the Subcontract-required full-time positions, with seven (7) replacements to date and an eighth pending for the Data Modeler position." IGS responded, clarifying that there were actually seven (7) positions *inclusive* of the upcoming Data Modeler replacement, and that VetsEZ's actions significantly contributed to the turnover of employees staffed by IGS on the Subcontract.

64.     On August 21, 2025, IGS sent a response letter to VetsEZ's attorney addressing the inaccurate notice of breach, notifying them that such claims of breach were false and technically impossible. IGS also noted the job postings as evidence of VetsEZ's intent to try and take workshare away from IGS. [See "Exhibit J" attached hereto].

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

65. The assertions of VetsEZ that IGS did not comply with the Subcontract, and breached the Subcontract, are false and not supported by any evidence.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

66. IGS repeats and re-alleges Paragraphs 1 through 65, inclusive, as though fully set forth herein.

67. On or about September 3, 2024, IGS and VetsEZ entered into the Subcontract.

68. IGS performed all of its obligations under the Subcontract.

69. Among other breaches, VetsEZ breached the Subcontract by adding additional requirements for open positions (breaching Article VI-Personnel), by removing staff without justification (breaching Article VI-Personnel), by not responding reasonably to IGS for qualified candidates within 10 business days and by backfilling positions themselves (Article VI-Personnel).

70. VetsEZ also breached the Subcontract after notifying IGS of its decision not to exercise Option 3, *but before the Subcontract term expired*, by directly soliciting IGS employees who were performing services on the HMDM contract (breaching Article XXXVI-Hiring of Employees), providing confidential information regarding the personnel staffing the HMDM contract to its new subcontractor, Hui Huliau Technology Services, LLC, a subsidiary of Hui Huliau (breaching Article XXXVIII-Protection of Trade Secrets, Confidential, and Proprietary Data) and directing Hui Huliau to solicit and hire IGS employees who were still performing services on the HMDM contract (breaching Article XXIV-Disclosure of Information and Article XXXVI-Hiring of Employees).

71. VetsEZ also breached the Subcontract by wrongfully withholding payment to IGS for IGS' September 2025 invoice.

72. As a proximate cause of VetsEZ's breach of contract, Counterclaimant has suffered damages in an amount to be proven at trial which exceeds $3,000,000.

## SECOND CLAIM FOR RELIEF – UNFAIR COMPETITION

73. Counterclaimant repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

74. Counterclaim Defendant has engaged in acts of unfair competition in violation of California Business and Professions Code section 17200, *et seq.*, by, among other things, misappropriating Counterclaimant's business opportunities, confidential information, and other proprietary resources for Counterclaim Defendant's own benefit.

75. Counterclaim Defendant's conduct is unlawful, unfair, and/or fraudulent, causing harm to Counterclaimant, including diversion of customers, loss of business opportunities, and other economic injury.

76. As a direct and proximate result of Counterclaim Defendant's unlawful and unfair conduct, Counterclaimant has suffered and will continue to suffer damages and is entitled to restitution, injunctive relief, and any other remedies available under law.

## THIRD CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

77. Counterclaimant incorporates by reference all preceding paragraphs.

78. Counterclaim Defendant owed Counterclaimant a duty of good faith and fair dealing in connection with the agreements and dealings between the parties.

79. Counterclaim Defendant, however, acted in a manner that deprived Counterclaimant of the benefits of those agreements, including, without limitation, by misusing confidential information, soliciting employees, and interfering with business opportunities.

80. Counterclaim Defendant's conduct constitutes a breach of the implied covenant of good faith and fair dealing, causing Counterclaimant to suffer damages in an amount to be proven at trial which exceeds $3,000,000.

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

## FOURTH CLAIM FOR RELIEF – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

81. Counterclaimant realleges and incorporates by reference all preceding paragraphs.

82. Counterclaim Defendant intentionally and wrongfully interfered with Counterclaimant's prospective economic relationships with its contractors, employees, customers, vendors, federal employees and federal agencies by misappropriating confidential information, making false statements, and inducing employees to leave.

83. Counterclaim Defendant's conduct was done with knowledge of the relationships and with the wrongful intent to disrupt them.

84. As a direct and proximate result of Counterclaim Defendant's interference, Counterclaimant has suffered economic harm, including loss of business opportunities and goodwill, in an amount to be proven at trial which exceeds $3,000,000.

## FIFTH CLAIM FOR RELIEF – MISAPPROPRIATION OF TRADE SECRETS – CUTSA (Cal. Civ. Code § 3426 et seq.)

85. Counterclaimant incorporates by reference all preceding allegations.

86. Counterclaimant owns certain trade secrets, including, without limitation, information designated as "Confidential Information" under the Subcontract, e.g., "custom work product, proprietary ideas and know-how, trade secrets, trade dress, accounting and financial data, marketing materials and data, personnel records, customer contact lists, proprietary pricing, technical data, and the like."

87. Counterclaim Defendant acquired, disclosed, or used these trade secrets without Counterclaimant's consent and in violation of Counterclaimant's rights.

88. Counterclaim Defendant's misappropriation was willful and intentional, causing Counterclaimant to suffer actual and potential economic harm.

89. Counterclaimant is entitled to damages, exemplary damages for willful and malicious misappropriation, and injunctive relief to prevent further unauthorized use or disclosure of its trade secrets.

### SIXTH CLAIM FOR RELIEF – CIVIL CONSPIRACY

90. Counterclaimant incorporates by reference all preceding paragraphs.

91. Counterclaim Defendant and one or more other persons or entities, including but not limited to Hui Huliau, entered into a combination and agreement to commit wrongful acts, including the acts alleged above, with the specific intent to harm Counterclaimant.

92. In furtherance of the conspiracy, each conspirator committed overt acts, resulting in injury to Counterclaimant.

93. Counterclaim Defendant's conduct, as part of this conspiracy, was a substantial factor in causing Counterclaimant's harm, including economic loss, business disruption, and reputational damage.

94. Counterclaimant is therefore entitled to compensatory and punitive damages.

### PRAYER

WHEREFORE, Defendant/Counterclaimant Initiate Government Solutions, LLC prays that this Court enter judgment in its favor with respect to each Claim for Relief and against VETERANS EZ INFO, INC., as follows:

1. That Plaintiff/Counterclaim Defendant's Complaint be dismissed in its entirety;

2. For compensatory damages according to proof;

3. For interest according to proof;

4. For punitive damages on the Fifth and Sixth Claims For Relief;

5. For Court to declare that Plaintiff/Counterclaim Defendant was in default under the terms of the Subcontract;

INITIATE GOVERNMENT SOLUTIONS, LLC'S ANSWER AND COUNTERCLAIM

6. Pre-judgement and post-judgment interest according to proof;

7. For attorney's fees and expenses according to proof as permitted by law;

8. For equitable relief including a preliminary and permanent injunction prohibiting further unlawful actions;

9. For costs of suit; and

10. For such other and further relief as this Court may deem proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Rule 38, IGS demands a trial by jury as to all issues so triable.

Dated: November 21, 2025                              NOONAN LANCE & BOYER LLP


                                            By:   /s/ James R. Lance
                                                  James R. Lance
                                                  Ethan T. Boyer
                                                  Attorneys for Defendant/Counterclaimant
                                                  Initiate Government Solutions, LLC