James R. Lance, Esq. (SBN 147173)
   jlance@noonanlance.com
Ethan T. Boyer, Esq. (SBN 173959)
   eboyer@noonanlance.com
NOONAN LANCE & BOYER LLP
701 Island Avenue, Suite 400
San Diego, California  92101
Telephone: (619) 780-0880
Facsimile: (619) 780-0877

Attorneys for Third Party Plaintiff
Initiate Government Solutions, LLC

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS EZ INFO, INC., a California corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>INITIATE GOVERNMENT SOLUTIONS, LLC, a Delaware company,<br><br>                Defendant. | Case No.: 25-CV-02658-W-AHG<br><br>**INITIATE GOVERNMENT SOLUTIONS, LLC'S THIRD-PARTY COMPLAINT**<br><br>Judge:          Hon. Thomas J. Whelan<br><br>Magistrate:    Hon. Allison H. Goddard<br><br>Action Filed:          October 7, 2025 |
| INITIATE GOVERNMENT SOLUTIONS, LLC, a Delaware company,<br><br>                Counterclaimant,<br><br>        v.<br><br>VETERANS EZ INFO, INC., a California corporation,<br><br>                Counterclaim Defendant. | **DEMAND FOR JURY TRIAL** |

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

INITIATE GOVERNMENT SOLUTIONS, LLC, a Delaware company,

Third-Party Plaintiff,

v.

HUI HULIAU TECHNOLOGY SERVICES LLC, a Hawaii limited liability company, and HUI HULIAU, LLC, a Hawaii limited liability company,

Third-Party Defendants.

For its Third-Party Complaint against Hui Huliau, LLC ("HH") and Hui Huliau Technology Services LLC ("HHTS") (sometimes jointly referenced as "Third-Party Defendants" or "Hui Huliau"), Third-Party Plaintiff Initiate Government Solutions, LLC ("IGS"), by and through counsel, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. §1332(a)(1) in that there is complete diversity between IGS and Third-Party Defendants, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2. The Third-Party Complaint stated herein also is within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) because the claims in the Third-Party Complaint are so related to Plaintiff's claims in the Complaint, and the claims in the IGS Counterclaim, that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over Third-Party Defendants because both entities conduct business in California; and in concert with a California company, namely Plaintiff/Counterclaim Defendant Veterans EZ Info, Inc. ("VetsEZ"), Third-Party Defendants engaged in acts in the Southern District of California which give rise to the Counterclaim and this Third-Party Complaint.

2                                    Case No. 25-CV-02658-W-AHG

4. Venue also is proper as to Third-Party Defendants because both entities conduct business in California. In addition, Third-Party Defendants, in concert with VetsEZ, both entities engaged in acts in this Judicial District which gave rise to the Counterclaim and this Third-Party Complaint.

**PARTIES**

5. Third-Party Plaintiff IGS is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in West Palm Beach, Florida.

6. IGS is a federal Information Technology ("IT") services provider that delivers innovative Enterprise IT and Health Services solutions across the federal sector. Its focus is on data analytics, health informatics, cloud migration, and the modernization of federal information systems.

7. IGS is a certified woman-owned small business.

8. Plaintiff and Counterclaim Defendant VetsEZ is a corporation organized and existing under the laws of California with its principal place of business in San Diego, California.

9. Third Party Defendant Hui Huliau Technology Services, LLC is a Hawaiian Limited Liability Company with a principal place of business in Hawaii, is a subsidiary of Third-Party Defendant Hui Huliau, LLC, is registered with the California Secretary of State as an out-of-state company doing business in California, and has an address for service of process in Irvine, CA. Hui Huliau Technology Services also currently has a job posting on Indeed.com in which it is soliciting personnel for work in California.

10. Third Party Defendant Hui Huliau, LLC is a Hawaii Limited Liability Company with its principal place of business in Hawaii. Hui Huliau, LLC has nine subsidiaries, including Third-Party Defendant Hui Huliau Technology Services, LLC, and does business in California directly and through its subsidiaries. Hui

3     Case No. 25-CV-02658-W-AHG

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

Huliau, LLC also currently has a job posting on Indeed.com and Militaryhire.com in which it is soliciting personnel for work in Los Angles, California.

11. Third-Party Defendants acted in concert with, and as the agent for, Plaintiff/Counterclaim Defendant VetsEZ, a corporation organized and existing under the laws of California with its principal place of business in San Diego, California.

## GENERAL ALLEGATIONS

### The Subcontract

12. IGS and VetsEZ were parties to Subcontract No. IGS-T4NG-TO26-HMDM (the "Subcontract") supporting the U.S. Department of Veterans Affairs Health Middleware and Data Management (HMDM) DevSecOps Support Services Contract held by VetsEZ as the prime contractor. [See Subcontract attached to hereto as "Exhibit A"].

13. Pursuant to the Subcontract, IGS is a subcontractor who provided services to VetsEZ, including development and maintenance for VX-130 (legacy data migration tool) and Voogle (legacy clinical decision support tool), related to the prime contract referenced above.

14. IGS commenced providing services under the Subcontract in 2024. The initial term was from September 3, 2024 to January 31, 2025.

15. On January 29, 2025, VetsEZ exercised its option to extend the Subcontract for an additional term from February 1, 2025 to September 27, 2025.

16. VetsEZ did not exercise its option to extend the Subcontract after the term which expired on September 27, 2025.

17. IGS does not dispute that VetsEZ had the right to not extend the Subcontract beyond September 27, 2025. However, with the assistance of and in concert with Third-Party Defendants, VetsEZ breached its contractual obligations and engaged in tortious conduct to unlawfully use IGS confidential information and interfere with IGS' contractual agreements and relationships with its personnel and

4                                    Case No. 25-CV-02658-W-AHG

other persons or entities. The economic damages to IGS caused by VetsEZ, Hui Huliau, their agents and co-conspirators exceeds $3,000,000.

18.     Article XXVI, Section (b) of the Subcontract prohibits VetsEZ from using, commercializing, or disclosing confidential information. [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

19.     Section (a) of Article XXVI defines "Confidential Information" to "include, but is not limited to, custom work product, proprietary ideas and know-how, trade secrets, trade dress, accounting and financial data, marketing materials and data, personnel records, customer contact lists, proprietary pricing, technical data, and the like." [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

20.     Section (a) of Article XXVI establishes that "any breach of the terms of this Article shall be deemed a material breach" of the Subcontract.  [See Subcontract, attached to hereto as "Exhibit A" at page 23-24].

21.     Article XXXVI of the Subcontract prohibits VetsEZ from soliciting IGS's personnel during the term of the Subcontract and for one (1) year thereafter. Specifically, the Subcontract prohibits VetsEZ from:

> directly or indirectly solicit[ing], recruit[ing], or hir[ing] as its employee or agent, any then current employee of the other Party assigned to or participating in the Work hereunder without the prior written consent of the Party employing such individual. The foregoing is not to be construed as a prohibition against routine, commercial, indirect solicitation or recruiting processes (e.g., via newspaper advertisement or Internet advertisement), but shall be construed as a prohibition against direct solicitations and hires. This clause shall in no way be used construed to restrict, limit, or encumber the rights of any employee granted by law.

[See Subcontract, attached to hereto as "Exhibit A" at page 28].

22.     Despite these restrictions, after deciding to replace IGS with Hui Huliau, but before VetsEz notified IGS that it would cease working with IGS,

5                    Case No. 25-CV-02658-W-AHG

VetsEZ embarked on a scheme to recruit and hire IGS personnel to perform the same work they had been performing for IGS under the Subcontract.

23.    On August 12, 2025, while the Subcontract was still in effect, IGS discovered that VetsEZ had posted job descriptions on its website matching all personnel positions assigned to IGS under the Subcontract except one.

24.    On August 25, 2025, counsel for VetsEZ provided notice to IGS for the first time that VetsEZ would not be exercising Option 3 or any further extensions to of the Subcontract and that the Subcontract would expire on September 27, 2025.

### VetsEZ & HH's Pressure Campaign to Recruit IGS Personnel Before the Subcontract Was Terminated

25.    On September 2, 2025, Third-Party Defendants Hui Huliau began soliciting IGS' staff members, encouraging them to leave IGS and go to work for Hui Huliau to perform the same work, on the same VetsEZ project, that they had been working for IGS. Therefore, IGS alleges upon information and belief that VetsEZ already had entered into an agreement with Third-Party Defendants to replace IGS with Hui Huliau by September 2, 2025.

26.    To hide its breach of the IGS Subcontract and conceal its unlawful solicitation of IGS staff, VetsEZ removed the job postings from its own website and directed Hui Huliau to re-post them on the Hui Huliau Website, and Hui Huliau did so.

27.    In early September 2025, Hui Huliau's recruiters began to aggressively solicit IGS' personnel. They used manipulative and coercive tactics, including communications crafted to suggest that IGS' personnel would inevitably transition to Hui Huliau/VetsEZ for the HMDM project.  Hui Huliau's recruiters also inundated IGS' staff with high-frequency messages and imposed unreasonably short response deadlines set to expire before the Subcontract ended. VetsEZ and Hui Huliau also worked in concert to impose negative consequences on IGS personnel who did not promptly agree to move to Hui Huliau.  Hui Huliau pursued its

6                    Case No. 25-CV-02658-W-AHG

wrongful course of action in concert with VetsEZ while the Subcontract between IGS and VetsEZ was still in effect.

28.     On September 2, 2025, a recruiter named Dan Berg, who identified himself as working for Hui Huliau, called IGS staff member J. Marcus Green and informed Mr. Green that Hui Huliau was taking over the resources for the HMDM DevSecOps contract, and informed him that 14 people were identified to be moved to Hui Huliau from IGS.

29.     On September 2, 2025, IGS staff member John Baumbauer received a voicemail message from Mr. Berg stating, "[M]y name is Dan Berg, I'm with Hui Huliau . . . I guess with consolidation, we will be taking over the project with MDM…would like to chat with you regarding next steps to bring you aboard. They do want to keep you as well[.]" [See Baumbauer Sworn Declaration and emails attached hereto as "Exhibit B"]. Hui Huliau contacted Mr. Baumbauer several additional times from September 3-8, 2025. ["Exhibit B"].

30.     On September 2, 2025, IGS staff member Bryan Walker received voicemail messages from Hui Huliau employees Dan Berg and Adrian Herzberger. [See Walker Sworn Declaration and email attached hereto as "Exhibit C"]. Herzberger stated on that date: "Hi Brian (sic), this is Adrian from Hui Huliau . . . I don't know if you've heard the news about IGS and the contract, but we're taking over some work share, which would include your position." ["Exhibit C"]. Herzberger called again on September 5 and sent an email on September 8 seeking to convince Walker to join Hui Huliau. ["Exhibit C"].

31.     On September 2, 2025, IGS staff member Clayton Henry received a voicemail from Mr. Berg stating "I know that we've got a few incumbents that we were wanting to bring over with us. So, I would like to chat with you about who we are as well as how we're going to make it a smooth transition for you . . . this is Dan Berg with Hui Huliau[.]" [See Henry Sworn Declaration attached hereto as "Exhibit D"].

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

32. In September 2025, IGS staff member Joe Kopra was contacted three times by Hui Huliau employees, a text message from Adrian Herzberger on September 3, a text message from Marcie Say-Aguinaldo on September 4 and a voicemail from Marcie that same day, all attempting to convince Mr. Kopra to leave IGS and join Hui Huliau and continue working on the same project for VetsEZ. [See Kopra Sworn Declaration attached hereto as "Exhibit E"].

33. In September 2025, IGS staff member Mike Baker was contacted seven times by Hui Huliau employees, a text message from Dan Berg on September 2, two telephone calls from Adrian Herzberger on September 3, a text message and voicemail from Marcie Say-Aguinaldo, a phone call from VetsEZ employee Dan Fink on September 5 and an email from Mr. Herzberger on September 8, all attempting to convince Mr. Baker to leave IGS and join Hui Huliau and continue working on the same project for VetsEZ. [See Baker Sworn Declaration attached hereto as "Exhibit F"].

34. On September 2, 2025, IGS staff member Jeffrey Husband was contacted by Mr. Berg, who attempted to recruit him to leave IGS and join Hui Huliau.

35. On September 2, 2025, Dan Berg called IGS staff member J. Marcus Green, identified himself as working for Hui Huliau, informed Mr. Green that Hui Huliau was taking over the resources for the HMDM DevSecOps contract, and told him that 14 people were identified to be moved to Hui Huliau from IGS.

36. During this time frame, IGS' Ishan Bhardwaj also was contacted by Hui Huliau about leaving IGS to come work for Hui Huliau.

37. On September 3, 2025, IGS staff member Robert Nace received a phone call and text message from Mr. Berg, who stated that IGS was transitioning off the HMDM DevSecOps contract and wanted to know if Mr. Nace was interested in staying on the contract. He informed Mr. Nace that VetsEZ wanted to keep him on the contract.

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

38.     VetsEZ and Hui Huliau's solicitation of IGS personnel was targeted, coercive and the conspirators misused IGS' confidential information to carry out their scheme.  In fact, VetsEZ openly admitted doing so: Andrew Park, the VetsEZ Program Manager on the HMDM DevSecOps contract, informed IGS personnel that Dan Fink, VetsEZ's Director of Digital Services, provided IGS' information to Hui Huliau so it could solicit them for employment.

39.     Hui Huliau was not a party to the Subcontract, nor had it performed any work on the HMDM DevSecOps while IGS was working with VetsEZ.  The only way Hui Huliau could know which IGS staff members to solicit was through VetsEZ's unlawful disclosure of confidential information to Hui Huliau.

40.     Hui Huliau did not solicit all of the IGS staff but selectively recruited them based on their perceived performance and the critical nature of their jobs for the HMDM DevSecOps contract, which it could only have known based on confidential information obtained from VetsEZ.

41.     Hui Huliau sent recruitment communications to IGS personnel's non-public email addresses.

42.     On September 8, 2025, Adrian Herzberger of Hui Huliau began sending emails to IGS personnel on their government (va.gov) email accounts titled "Time-Sensitive: Opportunity to Remain on VA Contract – Hui Huliau." The va.gov emails are not publicly known or available, and Hui Huliau could only have known the va.gov account emails if that information had been shared by VetsEZ for the purpose of soliciting IGS staff members.

43.     IGS demanded that VetsEZ abide by its contractual obligations, to no avail. On September 8, 2025, counsel for IGS sent a letter to counsel for VetsEZ notifying VetsEZ of the material breaches of the Subcontract, demanding that VetsEZ cease and desist its violations. [See "Exhibit G" attached hereto].

44.     VetsEZ never responded to the IGS demand on September 8, 2025. Instead, it stepped up its recruitment efforts of IGS personnel and attempted to

discredit IGS personnel who did not agree to join Hui Huliau.

45.     On September 8, 2025, IGS' counsel also wrote to Hui Huliau notifying it of the existence of the non-solicitation clause in the Subcontract and VetsEZ's breach of that provision, as well as VetsEZ's breach of its confidentiality obligation, and demanding that Hui Huliau cease and desist its solicitation of IGS personnel. [See "Exhibit H" attached hereto]. That same day, Hui Huliau's General Counsel, Scott Lee, wrote to IGS's counsel to indicate he had received the letter and that "the matter will be addressed accordingly."

46.     Later that day, September 8, 2025, Attorney Lee called IGS' counsel to provide assurances that he had instructed his client to cease and desist from all attempts to recruit IGS personnel.

47.     On September 9, 2025, VetsEZ began to openly solicit IGS staff to leave IGS and join Hui Huliau. Andrew Park of VetsEZ told IGS personnel at an "all hands" meeting that Hui Huliau was a good company, and encouraged them to talk to Dan Berg, the Hui Huliau recruiter, who had been reaching out to IGS staff members.

48.     On September 10, 2025, two days after Hui Huliau's General Counsel had assured IGS that Hui Huliau would stop all recruitment of IGS personnel, outside counsel for Hui Huliau sent a letter disclaiming any wrongdoing and indicating Hui Huliau would continue to recruit and hire IGS' personnel. [See "Exhibit I" attached hereto].

49.     On September 12, 2025, VetsEZ called an "all hands" meeting during which William Turner, VetsEZ's Executive Vice President, informed IGS staff members that open jobs (i.e. the ones held by IGS staff) would be on VetsEZ's website for IGS staff to apply if they wanted to stay with the program. The IGS personnel understood this as a not-so-subtle attempt to recruit for VetsEZ.

50.     VetsEZ and Hui Huliau worked together in concert to unlawfully solicit and hire IGS personnel. Shortly before the term of the Subcontract expired, they

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

ramped up the intensity of the communications with IGS personnel, giving them short deadlines to respond, sometimes requiring same-day responses,

51.     Their unlawful efforts succeeded. VetsEZ and Hui Huliau persuaded ten (10) IGS staff members to leave IGS and join Hui Huliau, individuals who would have worked on other IGS projects but for the actions of VetsEZ and Hui Huliau.

**Retaliation Against IGS Personnel Who Refused to Leave IGS**

52.     VetsEZ retaliated against IGS personnel who did not agree to leave IGS and join VetsEZ/Hui Huliau. VetsEZ subjected these workers to a smear campaign and trumped-up charges which resulted in investigations by the Officer of Inspector General.

53.     Hui Huliau contributed to this retaliation by informing VetsEZ which IGS personnel were resisting recruitment, enabling VetsEZ to selectively target them.

54.     When Mike Baker, John Baumbauer and Robert Nace, the primary developers for VX-130 and Voogle, declined to join Hui Huliau, VetsEZ filed complaints against them with the Office of Inspector General (OIG), triggering OIG investigations.

55.     VetsEZ also contacted IGS, demanding that these personnel immediately stop all work on the Subcontract project. Specifically, VetsEZ claimed John Baumbauer was an "insider threat," and claimed that there were ongoing investigations into Mike Baker and Robert Nace. VetsEZ failed to substantiate their baseless allegations.

56.     When IGS contacted the VA Personnel Security Adjudication Center to inquire about the status of the "insider threat" claims and any ongoing investigations, the VA reported they had no records of such a claim being filed by VetsEZ or anyone else.

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

57. Based on the lack of VA records reporting these three individuals as security threats, VetsEZ obviously had circumvented the appropriate claim procedures through the VA, when it went directly to OIG to start investigations against the IGS personnel, violating VA protocol and procedures.

58. VetsEZ's false claims triggered in-person OIG investigations at the residences of Mike Baker and John Baumbauer.

59. Additionally, even though Mike Baker told VetsEZ he was not leaving IGS, VetsEZ made false announcements that he was leaving IGS and retiring as the lead of the VX-130 project.

60. Mr. Baker sent an email to correct VetsEZ's false statement that he was leaving the project and IGS. His email clarified that he was not retiring from the EHRM project or leaving IGS.

61. None of the investigations initiated by VetsEZ revealed any wrongdoing by Mike Baker, John Baumbauer, or Robert Nace.

62. The motive of VetsEZ is obvious. VetsEZ attempted to convince Baker, Baumbauer and Nace to leave IGS and work for VetsEZ through Hui Huliau, because they are talented and VetsEZ was attempting to secure licensing rights to use their intellectual property, including VX-130 and Voogle.

63. When Baker, Baumabauer and Nace rejected the solicitation of VetsEZ, the company attempted to destroy their reputations and ability to work on government contracts for IGS or any other government contractor by making false claims of an "insider threat" and alleging they were being investigated by government agencies.

64. Once VetsEZ struck out on hiring Baker, Baumbauer and Nace, it was determined to prevent IGS from working with them or having rights to their intellectual property.

65. To prevent Baker, Baumbauer and Nace from continuing to work with IGS, VetsEZ was willing to destroy the careers of these three well respected and

12

talented individuals who are greatly contributing to the well-being of our military veterans. The conduct of VetsEZ was willful, malicious, and despicable and its actions supports an award of exemplary damages.

66.    As a direct result of VetsEZ's conduct, IGS sustained financial losses in excess of $3,000,000, which includes losses due to the actions by VetsEZ and Hui Huliau in unlawfully interfering with IGS' personnel, in misappropriating confidential information, intellectual property and trade secrets, and by VetsEZ refusing to pay the final invoice to IGS in the amount of $486,306.45.

## FIRST CLAIM FOR RELIEF

### (Intentional Interference with Subcontract between VetsEZ & IGS)

67.    Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68.    IGS and VetsEZ agreed to the Subcontract.

69.    Hui Huliau knew of the Subcontract.

70.    Hui Huliau's conduct in aggressively soliciting and hiring IGS' personnel prior to the end of the Subcontract's term, despite IGS' requests to stop the interference, prevented performance of the Subcontract and made performance more expensive and difficult.

71.    Hui Huliau intended to disrupt the performance of this contract and knew that disruption of performance was certain or substantially certain to occur.

72.    IGS was harmed due to departures of IGS personnel, which interfered with IGS' existing contractual duties, obstructed performance of the Subcontract, and disrupted IGS' business.

73.    Hui Huliau's conduct was a substantial factor in causing IGS' harm.

/ / /

/ / /

/ / /

/ / /

13                     Case No. 25-CV-02658-W-AHG

## SECOND CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations / Interference with IGS' contracts with its Personnel)**

74. Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75. IGS and its personnel agreed to employment contracts;

76. Hui Huliau knew of these contractual relationships;

77. Hui Huliau aggressively solicited and hired IGS personnel despite requests to stop, disrupting these relationships and resulting in the departure of 10 IGS staff members to Hui Huliau;

78. Hui Huliau intended to disrupt the performance of these contracts and/or knew that disruption of performance was certain or substantially certain to occur;

79. Hui Huliau's pressure tactics and the departures of IGS personnel interfered with IGS personnel's existing job duties, the individual contracts between IGS and its personnel, and IGS' future business based on pre-existing, ongoing relationships with these personnel who would have been assigned to other contracts and/or projects.

80. Hui Huliau's conduct was a substantial factor in causing IGS' harm.

## THIRD CLAIM FOR RELIEF

**(Aiding and Abetting Interference with Prospective Economic Advantage)**

81. Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82. IGS was harmed by VetsEZ's targeted interference with its prospective economic advantage because VetsEZ's wrongful actions deprived IGS of its ability to earn substantial profits to be derived from the ongoing employment of individuals who would have worked on other IGS contracts but for the actions of VetsEZ.

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

83. Further, Third-Party Defendants also are responsible for this harm in that they aided and abetted VetsEZ's tortious interference.

84. Hui Huliau knew that VetsEZ and IGS were parties to the Subcontract and that VetsEZ had no right to interfere with the relationship between IGS and its personnel.

85. Hui Huliau knew that VetsEZ was soliciting IGS staff to remain on the project and conspired with VetsEZ to assist in soliciting and hiring IGS personnel.

86. Hui Huliau provided substantial assistance to VetsEZ by aggressively soliciting IGS personnel, relying on manipulative and coercive tactics before the Subcontract expired, which caused ten IGS staff members to leave IGS and go to work for Hui Huliau.

87. Hui Huliau's conduct was a substantial factor in causing harm to IGS.

## FOURTH CLAIM  CLAIM FOR RELIEF

**(Aiding and Abetting Misappropriation of Trade Secrets
CUTSA (Cal. Civ. Code § 3426 et seq.))**

88. Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89. IGS owns certain trade secrets and intellectual property, including, without limitation, as designated in Article XXVI of the Subcontract, e.g., "custom work product, proprietary ideas and know-how, trade secrets, trade dress, accounting and financial data, marketing materials and data, personnel records, customer contact lists, proprietary pricing, technical data, and the like ."

90. The trade secrets and intellectual property rights of IGS through ownership and licensing include, without limitation, VX-130, Voogle, and other tools, to which IGS holds a license for current projects.

91. At the time of VetsEZ's misappropriation, set forth *infra*, these trade secrets and intellectual property ("IGS' Trade Secrets") were not generally known to

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

the public or other persons who can obtain economic value from their disclosure or use, and constituted trade secrets under Cal. Civ. Code § 3426 *et seq*.

92. IGS maintained its Trade Secrets as confidential. This information was the subject of reasonable efforts to maintain its secrecy.

93. During the existence of the Subcontract, Articles XXVI and XXVII prohibited VetsEZ from using any IGS confidential information, proprietary information, trade secrets or intellectual property for any reason whatsoever except when "necessary to the performance of [its] duties under" the Subcontract.

94. After the Subcontract ended on September 27, 2025, Articles XXVI and XXVII prohibited VetsEZ from maintaining possession of, or using for any reason whatsoever, IGS' confidential information, proprietary information, trade secrets or intellectual property, or any copies thereof.

95. VetsEZ improperly acquired, disclosed, and used IGS' Trade Secrets without IGS's consent and in violation of IGS's rights both before the Subcontract expired on September 27, 2025 and thereafter, in violation of Article XXVI and Article XXVII or the Subcontract.

96. VetsEZ's misappropriation was willful and intentional, causing IGS to suffer actual and potential economic harm.

97. VetsEZ shared IGS' Trade Secrets with Hui Huliau, and Hui Huliau used this information to unlawfully solicit IGS personnel to continue working on the Subcontract project.

98. Hui Huliau continued to use IGS' Trade Secrets in its solicitation campaign even after IGS provided notice that the information constitutes a trade secret and requested that the solicitation campaign cease. Hui Huliau ultimately informed IGS that it would continue despite IGS' requests for it to stop.

99. Hui Huliau's wrongful conduct, by aiding and abetting VetsEZ's misappropriation of trade secrets, was a substantial factor in causing IGS' harm, causing economic loss, business disruption, and reputational damage.

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT

100.   IGS is entitled to damages, exemplary damages for willful and malicious misappropriation, and injunctive relief to prevent further unauthorized use and/or disclosure of its confidential information, proprietary information, trade secrets and intellectual property.

### FIFTH CLAIM FOR RELIEF

**(Aiding and Abetting Misappropriation of Trade Secrets (DTSA) 18 U.S.C. § 1836)**

101.   Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102.   IGS owns certain trade secrets and intellectual property, including, without limitation, as designated in Article XXVI of the Subcontract, e.g., "custom work product, proprietary ideas and know-how, trade secrets, trade dress, accounting and financial data, marketing materials and data, personnel records, customer contact lists, proprietary pricing, technical data, and the like."

103.   The trade secrets and intellectual property rights of IGS through ownership and licensing include, without limitation, VX-130, Voogle, and other tools, to which IGS holds a license for current projects.

104.   Taken together, these trade secrets and intellectual property ("IGS' Trade Secrets") derive economic value from not being generally known to the public or others who could economically benefit from their disclosure or use.

105.   IGS maintained its Trade Secrets as confidential. This information was the subject of reasonable efforts to maintain its secrecy.

106.   During the existence of the Subcontract, Articles XXVI and XXVII prohibited VetsEZ from using any IGS confidential information, proprietary information, trade secrets or intellectual property for any reason whatsoever except when "necessary to the performance of [its] duties under" the Subcontract.

107.   After the Subcontract ended on September 27, 2025, Articles XXVI and XXVII prohibited VetsEZ from maintaining possession of, or using for any

17                    Case No. 25-CV-02658-W-AHG

reason whatsoever, IGS' confidential information, proprietary information, trade secrets or intellectual property, or any copies thereof.

108.    VetsEZ improperly acquired, disclosed, and used IGS' Trade Secrets without IGS's consent and in violation of IGS's rights both before the Subcontract expired on September 27, 2025 and thereafter, in violation of Article XXVI and Article XXVII or the Subcontract.

109.    VetsEZ's misappropriation was willful and intentional, causing IGS to suffer actual and potential economic harm.

110.    VetsEZ shared IGS' Trade Secrets with Hui Huliau, and Hui Huliau used this information to unlawfully solicit IGS personnel to continue working on the Subcontract project.

111.    Hui Huliau continued to use IGS' Trade Secrets in its solicitation campaign even after IGS provided notice that the information constitutes a trade secret and requested that the solicitation campaign cease. Hui Huliau ultimately informed IGS that it would continue despite IGS' requests for it to stop.

112.    Hui Huliau's wrongful conduct, by aiding and abetting VetsEZ's misappropriation of trade secrets, was a substantial factor in causing IGS' harm, causing economic loss, business disruption, and reputational damage.

113.    IGS is entitled to damages, exemplary damages for willful and malicious misappropriation, and injunctive relief to prevent further unauthorized use and/or disclosure of its confidential information, proprietary information, trade secrets and intellectual property.

## SIXTH CLAIM FOR RELIEF

### Civil Conspiracy

114.    Third-Party Plaintiff IGS repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.    Hui Huliau and VetsEZ entered into an agreement to commit wrongful acts, including the acts alleged above, with the specific intent to harm IGS.

18                    Case No. 25-CV-02658-W-AHG

116.   In furtherance of the conspiracy, each conspirator committed overt acts, resulting in harm to IGS.

117.   Hui Huliau's conduct, as part of this conspiracy, was a substantial factor in causing IGS' harm, including economic loss, business disruption, and reputational damage.

118.   IGS is therefore entitled to compensatory and punitive damages.

WHEREFORE, Third-Party Plaintiff IGS prays for judgment as follows:

1. For compensatory damages according to proof;
2. For interest according to proof;
3. For punitive damages on the Fourth and Fifth Claims For Relief;
4. For Pre-judgement and post-judgment interest according to proof;
5. For attorney's fees and expenses according to proof as permitted by law;
6. For equitable relief including a preliminary and permanent injunction prohibiting further unlawful actions;
7. For costs of suit; and
8. For such other and further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure, Rule 38, Third-Party Plaintiff IGS hereby demands a trial by jury on all issues in this action that are so triable.

Dated: December 5, 2025                    NOONAN LANCE & BOYER LLP

By:   /s/ James R. Lance
James R. Lance
Ethan T. Boyer
Attorneys for Defendant
Initiate Government Solutions, LLC

19                    Case No. 25-CV-02658-W-AHG

DEFENDANT/COUNTERCLAIMANT INITIATE GOVERNMENT SOLUTIONS, LLC'S
THIRD PARTY COMPLAINT